IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

**FILED**

2:54 pm, 5/18/26

**Margaret Botkins
Clerk of Court**

ARGENIS JESUS VILLALOBOS
PEREZ,

        Petitioner,

    VS.

SWEETWATER COUNTY
DETENTION CENTER OFFICER IN
CHARGE, *in his official capacity*, also
known as, Richard Como,

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT
SALT LAKE CITY ACTING FIELD
OFFICE DIRECTOR, *in his official
capacity*, also known as, Evan Tjaden

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
SECRETARY, *in their official capacity*,

UNITED STATES ATTORNEY
GENERAL, *in their official capacity*,

        Respondents.

Case No.  26-CV-00121-ABJ

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2241 [ECF 1]

Petitioner Argenis Jesus Villalobos Perez filed a Petition for Writ of Habeas Corpus

under 28 U.S.C. § 2241 on March 31, 2026.  [ECF 1] The Court, having considered the

Petition [ECF 1], Response [ECF 17], Reply [ECF 20], and being otherwise fully advised

concludes Mr. Villalobos Perez's Petition for Writ of Habeas Corpus must be GRANTED.

## BACKGROUND

Mr. Villalobos Perez is a citizen of Venezuela. [ECF 1 p. 2] On or about September 11, 2022, Mr. Villalobos Perez came to the United States seeking asylum. [ECF 1 p. 2] Mr. Villalobos Perez crossed the border and presented himself to immigration officials who detained him while they investigated his background.[1] [ECF 1 p. 2] The Department of Homeland Security (DHS) presented Mr. Villalobos Perez with a Notice to Appear (NTA) which placed him in removal proceedings under 8 U.S.C. § 1229(a) and directed him to appear in immigration court in Virginia on January 24, 2023. [ECF 1 p. 3] Mr. Villalobos Perez was then granted parole and released on his own recognizance. [ECF 1 p. 3] Mr. Villalobos Perez filed his asylum application on August 15, 2023. [ECF 1 p. 3] Mr. Villalobos Perez then received work authorization and a social security number. [ECF 1 p. 3] Sometime thereafter, he moved to Utah with his wife, two daughters, mother, and disabled twin brother to be near family. [ECF 1 p. 3]

On March 27, 2026, Mr. Villalobos Perez was traveling from Utah to Virginia to start his new job. [ECF 1 p. 4] An officer pulled him over for speeding. [ECF 1 p. 4] Mr. Villalobos Perez gave the officer various forms of identification and the officer returned to the car and arrested him. [ECF 1 p. 4] Mr. Villalobos Perez was then booked into the Sweetwater County Detention Center under United States Immigration and Customs Enforcement (ICE) custody. [ECF 1 p. 4]

---

[1] Mr. Villalobos Perez states he presented himself to immigration officials [ECF 1 p. 2], while Respondents state that he was apprehended after illegally crossing the border and did not present himself at a port of entry. [ECF 17 ex. 1 p.2] Neither party provides documentation to support their statements. This factual disagreement is immaterial and makes no difference to the Court's analysis in this case.

2

### *I. Petition [ECF 1]*

Mr. Villalobos Perez filed this petition arguing he is illegally detained. [ECF 1] He contends that once a noncitizen has been detained, released into the United States, and placed in removal proceedings under 8 U.S.C. § 1229a, detention arises under 8 U.S.C. § 1226(a). [ECF 1 p. 12] He asserts that because DHS granted him humanitarian parole into the United States more than two years ago, revocation of that parole is only permitted under 8 U.S.C. § 1226(b). [ECF 1 p. 12] Section 1226(b) requires a change in circumstances to revoke parole. [ECF 1 pp. 12-13] Mr. Villalobos Perez seeks relieve under the Immigration and Naturalization Act (INA) because under the statutes, the government was required to show a material change in circumstances before revoking his parole. [ECF 1 pp. 13-14] He also seeks relief under the Fifth Amendment, arguing his continued detention violates the Due Process Clause. [ECF 1 pp. 14-15] Third, he argues he is entitled to relief under the Administrative Procedures Act (APA). [ECF 1 p. 17]

### *II. Federal Respondents' Response [ECF 17]*

In response, the Government argues that Mr. Villalobos Perez is properly detained under 8 U.S.C. § 1225(b). [ECF 17 p. 4] It asserts the only determination this Court needs to make is whether Mr. Villalobos Perez is properly detained under that statute. [ECF 17 p. 4] The Government acknowledges courts within this district have determined 8 U.S.C. § 1226(a) applies to non-citizens in Mr. Villalobos Perez's position. [ECF 17 p. 4] The Government recognizes one of this district's decisions came out after a contrary determination by a split panel of the Fifth Circuit Court of Appeals. [ECF 17 p. 4] It urges this Court to reconsider the position taken by other courts in this district after a recent ruling

by the Eighth Circuit. [ECF 6 p. 5] The Government maintains its position that 8 U.S.C. § 1225(b) applies to Mr. Villalobos Perez. [ECF 6 p. 4] The Government also argues that even if this Court determines § 1226(a) applies to Mr. Villalobos Perez, the correct outcome is a bond hearing in front of an immigration judge, not immediate release. [ECF 6 pp. 5-6]

### IV. Reply [ECF 9 & 10]

In Reply, Mr. Villalobos Perez argues the Government was required to show a material change in circumstances before rearresting him because DHS had previously granted him parole to remain in the country. [ECF 20 p. 1] He argues 8 U.S.C. § 1226(b) governs parole revocations and requires a material change in circumstances. [ECF 20 p. 2] Thus, Mr. Villalobos Perez argues his rearrest without cause was *ultra vires*. [ECF 20 p. 1] He contends his case is unlike the Fifth and Eighth Circuit split decisions because neither involved an asylum seeker who had been granted parole during the pendency of the asylum case. [ECF 20 p. 2] Mr. Villalobos Perez asserts the hundreds of decisions rejecting the Government's position contain a better analysis of the § 1225 versus § 1226 issue and he directs the Court to a recent Second Circuit case rejecting the Government's position. [ECF 20 pp. 3-5] He further argues that while a bond hearing is better than nothing, it is not the appropriate remedy in his case. [ECF 20 p. 5] Mr. Villalobos Perez contends immediate release is the proper remedy because the government lacked the authority to rearrest him in the first place. [ECF 20 p. 5]

4

## *DISCUSSION*

Mr. Villalobos Perez filed this petition on March 31, 2026. [ECF 1] At 1:35 p.m., on April 1, 2026, the Court entered an order requiring ICE to maintain Mr. Villalobos Perez's presence in this district pending the outcome of his petition. [ECF 11] Unbeknownst to the Court, at 9:56 a.m. on April 1, 2026, ICE transferred Mr. Villalobos Perez from the Sweetwater County Detention Center to the Denver CDF in Colorado. [ECF 17 pp. 1-2] As all parties note, Mr. Villalobos Perez's transfer out of the district does not divest this Court of jurisdiction. While generally, jurisdiction over a § 2241 habeas petition rests in the district where the petitioner is located, Mr. Villalobos Perez was confined in the District of Wyoming when he filed his petition. 28 U.S.C. § 2241(a). "And '[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief' and 'is not destroyed by a transfer of the petitioner.'" *Serna v. Commandant, USDB-Leavenworth*, 608 F. App'x 713, 714 (10th Cir. 2015) (quoting *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985)); *see also e.g., Ex parte Endo*, 323 U.S. 283, 306, 65 S. Ct. 208, 220, 89 L. Ed. 243 (1944) (holding the district court did not lose jurisdiction over the case when petitioner was transferred out of the jurisdiction post-filing and may direct the writ to any respondent within the court's jurisdiction who has legal authority to effectuate the writ); *Rumsfeld v. Padilla*, 542 U.S. 426, 441, 124 S. Ct. 2711, 2721, 159 L. Ed. 2d 513 (2004) (reaffirming the holding in *Endo*). However, Mr. Villalobos Perez's transfer to a different facility moots his dispute against the Sweetwater County Detention Center Officer in Charge because that party no longer has immediate custody over Mr. Villalobos Perez. *Leonardo G.Z v. Noem*, ---F.Supp.3d----, No. 25-CV-0600-SEH-MTS, 2025 WL 3755590,

at *1, n. 1 (N.D. Okla. Dec. 29, 2025) (dismissing sheriff after petitioner was transferred to a different facility and compiling cases).

A writ of habeas corpus under 28 U.S.C. § 2241 may be granted to an individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody." *Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012).

### I. Detention is under 8 U.S.C. § 1226(a)

The Immigration and Nationality Act (INA) contains two mechanisms for detaining noncitizens pending removal proceedings. Under § 1225(b)(2)(A), the noncitizen who is "seeking admission" is subject to mandatory detention. 8 U.S.C. § 1225(b)(2)(A) ("in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained.") Noncitizens detained under § 1225 are not entitled to bond hearings. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Under § 1226, noncitizens arrested and detained "on a warrant by the Attorney General" are eligible for release on bond or conditional parole. 8 U.S.C. § 1226(a). These noncitizens are entitled to an individualized bond hearing before an immigration judge at the outset of their detention. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). There are exceptions to bond or parole eligibility for noncitizens with certain criminal histories or charges. 8 U.S.C. § 1226(c).

Before 1996 and between 1997 and 2025, "successive presidential administrations and many immigration judges treated unadmitted [noncitizens] as being subject to § 1226(a) rather than § 1225(b)(2)." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498-500 (5th Cir. Feb. 6, 2026). In July of 2025, the Department of Homeland Security began detaining unadmitted noncitizens pursuant to § 1225(b)(2)(A) rather than § 1226(a). *Id.* at 500. This has resulted in thousands of cases in federal courts from petitioners seeking writs of habeas corpus. The district courts found in favor of the petitioners in almost all cases. *Id.* (citing *Barco Mercado v. Francis*, No. 25-cv-6582, 811 F. Supp. 3d 487, 506 (S.D.N.Y. Nov. 26, 2025) which lists 350 decisions that found for the habeas petitioner); *Cunha v. Freden*, ---F.4th ----, 2026 WL 1146044, *4 (2nd Cir. 2026) (determining over ninety percent of district court judges rejected the Government's position).

On February 6, 2026, a split panel on the Fifth Circuit Court of Appeals determined DHS's new interpretation of the Immigration and Nationality Act was lawful. *Buenrostro-Mendez*, 166 F.4th at 508. A split panel of the Eighth Circuit Court of Appeals followed suit on March 25, 2026. *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026). The Government urges this Court to reconsider the position taken by courts in this district after the decisions in *Buenrostro* and *Avila*. The Court is not bound by these decisions, nor does it find their reasoning persuasive.

Respondents admit this case is materially indistinguishable from two other cases out of this district, *Serrato v. ICE et al.*, No. 25-CV-245-SWS (D. Wyo. Nov. 18, 2025) and *Gelashvili v. United States Immigration and Customs Enforcement Denver Field Office Director, et al*, No. 26-cv-00042-SWS (D. Wyo. Mar. 9, 2026). It is also similar to this

Court's decision on May 8, 2026, in *Zamora v. Sweetwater County Sheriff et.al.*, No. 26-cv-00122-ABJ (D. Wyo. May 8, 2026). This Court notes that *Gelashvili* was decided after the Fifth Circuit's decision in *Buenrostro*, and *Zamora* was decided after both *Buenrostro* and *Avila*. In all three cases, the courts in this district determined that §1226(a) applied to individuals like Mr. Villalobos Perez.

While the Tenth Circuit has yet to issue an opinion on the matter, six Circuits have weighed in. Respondents cite the Fifth and Eighth Circuits to support their position. However, the Second, Seventh, Eleventh, and Sixth Circuits have issued opinions rejecting the government's position. *Cunha*, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, ---F.4th ----, 2026 WL 1223250, at *21 (7th Cir. May 5, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, ---F.4th ----, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft*, No. 25-1965, ---F.4th ----, 2026 WL 1283891, at *11 (6th Cir. May 11, 2026). As the Second Circuit Court of Appeals said in rejecting Respondents' position:

> Today, although we part ways with two other circuits that have addressed this question, we join the overwhelming majority of federal judges across the Nation to consider it and conclude that the government's novel interpretation of the immigration statutes defies their plain text. That text makes clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.

*Cunha*, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026).

8

As this Court recently reaffirmed in *Zamora*, it agrees with the reasoning in *Cunha*, *Serrato*, *Gelashvili*, *Castanon-Nava*, *Hernandez Alvarez*, *Lopez-Campos*, and the hundreds of other courts that have addressed the issue. In short, the "plaint text, . . . structure, history, and purpose" of the INA statutes make clear that § 1225 primarily applies to noncitizens encountered by law enforcement at or near their entry into the United States (whether lawful or unlawful). Section 1226 primarily applies to noncitizens already within the interior of the United States. *Cunha*, -- F.4th at ----, 2026 WL 1146044; *see also e.g.*, *Nielsen v. Preap*, 586 U.S. 392, 396-97 (2019) (stating that § 1226(a) "applies to most such aliens" who are "present in the country" but removable); *Jennings*, 583 U.S. at 289 (§ 1226(a) and (c) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings").

Section 1225(b)(2)(A) applies to an "applicant for admission" who is "seeking admission" and is not "clearly and beyond doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). While the term "applicant for admission" is defined by the statute and applies to Petitioner, "seeking admission" is not defined and is given its plain meaning. 8 U.S.C, § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission"); *Cunha*, 2026 WL 1146044 at * 8. As courts addressing this issue have explained, the requirement that a noncitizen be "seeking admission" means they must be currently requesting lawful entry into the United States. *Id.* at *6-*8. Thus, §

9

1225(b)(2)(A) does not apply to people like Mr. Villalobos Perez who are "applicants for admission" under the statute, but who are not "seeking" entry. *Lopez-Campos*, 2026 WL 1283891, at * 11.

As the Court in *Cunha* thoroughly explains, the above interpretation comports with, and is reinforced by, the "broader context and structure of those provisions in the overall statutory scheme." *Cunha*, at *14.   One point bears repeating—the Government's interpretation of §1225(b)(2)(A) would render the 2025 Laken Riley Act meaningless. *Serrato*, at ECF no. 23, p. 8; *Cunha*, at *16.   Congress amended § 1226(c) in the Laken Riley Act by adding a new category of people to whom mandatory detention applies pending their removal from the United States:

> [A]ny alien who . . . is (i) inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person[.]

8 U.S.C. § 1226(c)(1)(E).   As many courts have pointed out, if the Government's interpretation §1225(b)(2)(A) was correct then the 2025 addition of §1226(c)(1)(A)(E) would be pointless. *Serrato*, at ECF 23 pp. 8-9.

For decades, the Government's relevant agencies operated under and enforced this statutory scheme.  *See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled ... will be eligible for bond and bond

redetermination."). The Court understands DHS, supported by the Board of Immigration Appeals, has recently changed its decades-long approach, but neither Respondents here, nor the recent decisions from the Fifth and Eighth Circuits have persuaded this Court that the prior understanding and application of the statutory scheme was erroneous or broken. "The Court joins the many other courts nationwide who have declined to accept Respondents' novel new interpretation of decades-old law." *Hernandez v. Baltazar*, No. 1:25-CV-03094-CNS, 2025 WL 2996643, at *7 (D. Colo. Oct. 24, 2025) (collecting cases). Consequently, the Court concludes 8 U.S.C. § 1226(a) better applies to Mr. Villalobos Perez's case.

### II. Immediate release is necessary

In *Serrato* and *Gelashvili*, the court's analysis ended after the consideration of §§1225(b)(2)(A) and 1226. In those cases, the court granted the petitions and ordered Respondents to give the petitioners individualized bond hearings in front of an immigration judge as is contemplated by §1226(a). That outcome is what the Respondents argue is available for Mr. Villalobos Perez should the Court reject its argument that he is properly detained under §1225(b)(2)(A). Mr. Villalobos Perez, however, argues he is entitled to immediate release from detention because the government lacked the authority to revoke his release without showing a material change in circumstances. Respondents do not address this argument in their Response. Having considered Mr. Villalobos Perez's position, the Court concludes he is correct.

At the outset, the Court notes Petitioner's argument differs somewhat between his petition and reply. In his petition, Mr. Villalobos Perez states he was granted humanitarian

11

parole into the country. [ECF 1 p. 3] His reply states he was granted conditional parole under §1226. [ECF 20 p. 2] The documents provided by Mr. Villalobos Perez demonstrate he was initially granted humanitarian parole under INA §212(d)(5), codified at 8 U.S.C. § 1182(d)(5), on September 15, 2022, and the parole expired on November 16, 2022. [ECF1 ex. 4] Humanitarian parole can be terminated either automatically or on notice. 8 C.F.R. §212.5(e)(1)&(2). Automatic termination occurs when the noncitizen departs the United States or at expiration of the time for which parole was authorized. *Id., see also* 8 U.S.C. § 1182(d)(5)(A) (permits the termination of parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served.") Here, the documents provided by Mr. Villalobos Perez demonstrate his humanitarian parole automatically expired on November 16, 2022. [ECF 1 ex. 4] Mr. Villalobos uses both the terms conditional parole and humanitarian parole throughout his petition and reply. The parties appear to agree that he was initially granted humanitarian parole, issued a Notice to Appear, and then granted conditional parole under §1226(a) after the expiration of his humanitarian parole. [ECF 17 pp. 2-3; ECF 20 p. 2]

## A. Due Process

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 2498, 150 L. Ed. 2d 653 (2001). The Court analyzes Due Process claims by applying the factors from *Mathews v. Eldridge*: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

12

additional or substitute procedural safeguards; and finally, the Government's interest." 424 U.S. 319, 335 (1976).

### 1. Private interest

"When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Jose Catillo Torres, Petitioner, v. Warden Scarlet Grant et al., Respondents*, No. CIV-26-619-D, 2026 WL 1256937, at *4 (W.D. Okla. May 7, 2026) (Unreported) (internal quotation omitted)(citing *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)(finding parolee has a liberty interest in his continued liberty).  Mr. Villalobos Perez has a significant interest in remaining free from detention.  DHS released Mr. Villalobos Perez on his own recognizance more than two years ago and he has not violated the terms of his conditional release. The Government does not allege any change in circumstances that justifies Mr. Villalobos Perez's re-detention after more than two years of successful release. The first factor weighs in favor of Mr. Villalobos Perez.

### 2. Risk of erroneous deprivation

Here, the risk of erroneous deprivation is high.  ICE re-detained Mr. Villalobos Perez under an inapplicable statute, without notice, and without the opportunity to present his case to an Immigration Judge. [ECF 1] Mr. Villalobos Perez stated that ICE officials told him the only way for his case to be heard was through a petition for writ of habeas corpus. [ECF 1 p. 4] Mr. Villalobos Perez received no notice prior to his re-detention, has been denied access to the procedural safeguards in place to determine whether the

13

revocation of his conditional parole was warranted, and DHS asserts no reason for revoking his previously granted parole other than a change in policy. *Castillo Torres*, 2026 WL 1256937 at *5. Thus, this factor weighs in favor of Mr. Villalobos Perez.

### 3. Governmental interest

Finally, the Court recognizes the government has an interest in enforcing the country's immigration laws. Analysis of this factor requires the Court to "consider the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "[T]he Court can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations." *Castillo Torres*, 2026 WL 1256937 at * 5 (Citing *e.g., Iza*, 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation.")). The Government's interest in re-detaining Mr. Villalobos Perez is also lower given his success over the prior two and a half years of conditional release. The balance of the *Mathews* factors weighs in favor of Mr. Villalobos Perez.

## III. Fourth Amendment considerations

Even if Mr. Villalobos Perez was not entitled to notice prior to the revocation of his previously granted conditional parole, the Court's determination that his current detention falls under §1226 nevertheless requires his immediate release. A growing number of courts across the country have determined "that when DHS detains a noncitizen under § 1226(a) without a warrant and without satisfying § 1357(a)(2), the detention is unlawful from the

14

outset and immediate release is required." *Gustavo Morelos Valdovinos, Petitioner, v. Kristi Noem, et al., Respondents.*, No. 1:26-CV-0338 JB/DLM, 2026 WL 948285, at *7 (D.N.M. Apr. 8, 2026) (compiling cases).

An officer pulled Mr. Villalobos Perez over for speeding. [ECF 1] The officer then detained Mr. Villalobos Perez and booked him into the Sweetwater County Detention Center under ICE custody. Detention of a noncitizen under §1226(a) requires a warrant from the attorney general and Respondents did not obtain a warrant prior to detaining Mr. Villalobos Perez. [ECF 17 ex. 1 p. 3]

> The INA authorizes immigration officers to make warrantless arrests only in limited circumstances, including when an immigrant is 'entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of aliens,' and when the officer has reason to believe the immigrant is in violation of such laws or regulations and is a flight risk. 8 U.S.C. § 1357(a)(2), (5)(A)-(5).

*Salazar v. Dedos*, --- F. Supp. 3d ----, No. 1:26-CV-00251 WJ-JHR, 2026 WL 555336, at *5 (D.N.M. Feb. 27, 2026). Respondent does not contend anyone determined that Mr. Villalobos Perez was likely to escape before they could obtain a warrant—instead they state he was detained pursuant to § 1225(b). This Court, however, determined that Mr. Villalobos Perez's detention under §1225(b)(2)(A) was improper and he was correctly detained pursuant to § 1226(a) which requires a warrant or a determination that he was likely to escape before a warrant could be obtained. 8 U.S.C. § 1357(a)(2).

Respondents failed to follow the statutory requirements of §§ 1226(a) and 1357(a)(2). Further, even if the respondents had permissibly executed a warrantless arrest,

15

"the Fourth Amendment requires a prompt judicial determination of probable cause." *Valdovinos*, 2026 WL 948285 at *6. Here, there is nothing in the record, nor does the Government contend there is, that suggests any judicial officer reviewed the basis for Mr. Villalobos Perez's detention. *See id.* at * 7. Where, as here, a noncitizen is detained "under § 1226(a) without a warrant and without satisfying § 1357(a)(2), the detention is unlawful from the outset and immediate release is required." *Id.* at *7; *see also, Singh,* 2026 WL 483651 at *12; *Guarnizo v. Quinones*, No. 6:26-CV-624-JSS-RMN, 2026 WL 982816, at *1 (M.D. Fla. Apr. 13, 2026); *E.P.G. v. Bondi*, No. 26-560 (JRT-EMB), 2026 WL 242266, at *1 (D. Minn. Jan. 29, 2026); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025).

### *IV. Motion to Proceed* In Forma Pauperis *[ECF 3]*

Mr. Villalobos Perez moved to proceed *in forma pauperis*. The Court finds that, while Mr. Villalobos Perez does have $600 in his bank account, he has significant monthly expenses and debts. The Court finds he has demonstrated a financial inability to pay and therefore grants him leave to proceed *in forma pauperis.* 28 U.S.C. § 1915(a).

### *CONCLUSION*

**NOW, THEREFORE, IT IS ORDERED** Mr. Villalobos Perez's Petition for Writ of Habeas Corpus [ECF 1] is **GRANTED.**

**IT IS FURTHER ORDERED**, Respondents shall **IMMEDIATELY RELEASE** Mr. Villalobos Perez from custody subject to the conditions of his previously issued conditional release.

**IT IS FURTHER ORDERED**, Respondents shall submit a status report within three days of this Court's order confirming compliance with this Court's order.

**IT IS FURTHER ORDERED**, Petitioner's Motion to Proceed *in Forma Pauperis* [ECF 3] is **GRANTED.**

**IT IS FURTHER ORDERED**, the case against Sweetwater County Detention Center Officer in Charge, *in his official capacity*, also known as Richard Como is **MOOT.**

Dated this _18_ day of May, 2026.

Alan B. Johnson
United States District Judge